I'm a dog owner, and it's a given that I'm legally responsible for the conduct of my dog. Whether it's biting a person, tearing up a neighbor's lawn, or making sure I have a plastic baggie to pick up its waste during a walk, I'm responsible for that dog. The social interest protected by those laws, I would submit the Fourth Amendment is just as important as those rights that are protected by those laws, civil laws, and even criminal laws regarding what my dog does. The case before the court on these particular facts allows the police to circumvent the warrant requirement with their dog as long as there is no intent to facilitate entry into the vehicle. Intent is generally not a requirement in Fourth Amendment jurisprudence. Typically, it's an objective test. It's not a subjective test. In looking at the facts in this case, I would draw the court's attention not to the conduct of McGinnis, the dog handler, Officer McGinnis, but instead Officer Sanders, the officer that was responsible for opening, maintaining, and controlling the door during the passenger's exit. I understand that the government forwarded to the court Government Exhibit 3, which is a videotape of that particular transaction. And in the videotape, it is undisputed that Officer Sanders unlocks, opens the door at the handle, opens the door this way, and as the passenger exits the vehicle, he keeps his hand on the door continually. Well, wasn't that because the passenger, well, first of all, the passenger chose to leave the vehicle as opposed to sit in the vehicle during the search? And wasn't he putting on his shoes or something? I have not seen the video because it came in last night. Judge Reed. I'm sorry. So, wasn't it reasonable for him to hold on the door so the door didn't smash his legs because he's turned around there outside the vehicle? Judge Reed, you are correct that that is, that was necessary. The passenger did opt to leave the vehicle. However, I believe the focus has to be on police action and police conduct based on the facts as they occurred. And what you can also see in the video is as Sanders' hand is on the door, it's not in jeopardy of closing. It doesn't need to be held open. He opens the door, maintains his hand on it, perhaps creating the impression that the door would slam or close back on the passenger. But that was totally gratuitous on his part. It wasn't necessary. And as the passenger walks to the rear of the vehicle, Officer Sanders immediately, when he turns and the door is out of vision, he follows him back. And that door does not move. So, my analysis or approach to this would be that we have to focus on police conduct because that's what the Fourth Amendment prescribes is police conduct. And would we have a different situation if the passenger had opened the door? Yes, that would implicate different interests because the Fourth Amendment would not apply to the passenger or the conduct of the driver. Did he consent to opening the door? I believe that's fair. Sure. I believe that's a fair assumption that he would exit the passenger door. Let me ask you this. When the dog goes in the car, do you think that's a search? Yes. Yes. And do you think probable cause is required to authorize the dog to go in the car? I believe the law is clear that when a dog alerts to a vehicle, the exterior of a vehicle, that that does constitute probable cause to then search the car. The problem in this case is the dog crosses the threshold. I know that's what happened. My question is, do you think that before the dog can cross the threshold, there must be probable cause? Absolutely. Absolutely. That's the dividing line. Now, this Stone case from the 10th Circuit is one of the early cases in this area. And they seem to say that, well, I don't know, how do you read that? I read it to say they seem to think if there's reasonable suspicion, then there's no point of violation if the dog jumps in the car. Is that how you read it? I did not read it that way. I know Stone does refer to the dog's entry as a troubling issue. And ultimately, Stone involved... I'm not saying whether it's right or wrong. I'm just trying to, first of all, establish what it says. I did not read Stone to say that reasonable suspicion is enough to allow the dog to enter the vehicle. You thought they said there was probable cause there? No. I believe Stone affirmed the action based on two factors. It was the driver that opened the hatchback. And the dog instinctually jumps into the car. And they were troubled by that. And my reading of Stone is they're troubled by that because typically, to enter the car, to cross the threshold, does require a finding of probable cause. And you said we should look at the intent of the officer. So you would just say, well, the officer put the dog in a position where the dog could jump in the car. So the question is whether that's a justified intrusion? I believe McGinnis certainly is somewhat responsible for the dog. But again, I believe the conduct of Sanders is really key here. If McGinnis can't control the dog and the dog jumps in, well, I guess initially I would say, yes, McGinnis is responsible. I think you'd say that. Yes. It's his dog. He's the handler. He knows the routine. So on some level, I think it's arguable that he did have a duty to close the door based on the risk that he would enter the vehicle. But again, I believe... I don't think it's a duty to close the door. It's kind of a duty to keep the dog from entering. However he would do that, by closing the door or by taking a tighter lead on the door. Lyons is also a case out of this circuit. And again, I would point out that in that case, the passenger opened the window. Willingham is a case from the Tenth Circuit where the police opened the sliding door and they did find that that violated the Fourth Amendment. So again, the key fact here is police conduct, police action. And Willingham supports the view that police officers and their conduct are key to this particular issue. I do want to... I know I'm into my rebuttal time. I do want to briefly address inevitable discovery, which was raised in the government response brief. I would want to point out that was not argued by the government below or addressed by magistrate or district courts. We don't believe there's a factual basis developed to preserve it for review. And I would assert that whatever reliance they could have had on inevitable discovery has been waived. I think the theory is if the door was closed, the dog still would have been able to smell drugs. And I don't believe there's a sufficient development of the factual record to allow the court to reach that issue. And again, it was never raised. The driver's side window. But again, you know, we're talking two searches did not locate these drugs. They had to take the vehicle to the police station and then there they found a secret compartment. And I just don't believe there's a sufficient factual basis for this court or the government to argue or show that. What about the fact that the dog instinctively moved into the passenger area of the car? Does that create a level of suspicion at the moment before the dog crosses the threshold? The fact that the dog is compelled to move that way? Was that addressed in the district court? I do not believe it was, but I certainly think that we don't know at what point. There's not a basis to say that it was alerting and the fact that it instinctually moved there means it was smelling drugs before it entered. I don't believe that factual record has been developed either. Thank you, Your Honor. May it please the court. My name is Brent Veneman. I'm an assistant United States attorney representing the government, and I was the attorney for the government at the suppression hearing. And this is a fact-intensive inquiry based on the claim that the officer's conduct violated the Fourth Amendment. And so I'd like to begin by discussing this evidence, the record regarding the vehicle inspector. His name was Inspector Sanders, who was with the canine officer at the passenger side door and his conduct during this process of the door opening. And I think what the videotape evidence would show is that, in fact, it was the passenger, Mr. Sandoval, who opened the door. And I recognize that is disputed by the appellant. But in any event, the door was opened because the passenger had elected to exit the vehicle. And so this was not a scenario that was created or designed by the troopers to facilitate the dog's entry into the car. He was asked if he wanted to get out, and he elected to do so. I believe it was a search based on probable cause that the dog was in the process of alerting to the odor of a controlled substance, Your Honor. If it was a search, do you think there was probable cause before the dog crossed the threshold to get into the car? Is that what you're saying? I believe that the dog was in alert mode for the odor of narcotics, and that, I think, is... Was there any testimony that would support that, that the dog's move to the car was based on detection of drugs such that the court could find probable cause before the dog crossed the threshold? Yes, sir, there was. Who would we look to for that? That was Sergeant McGinnis' testimony, Your Honor. I think that's... It wasn't really the district court's rationale, but it would be arguably more consistent with conventional doctrine if there were probable cause before the dog entered, as opposed to looking at the intent of the officers. Yes, sir. I think the transcript of the suppression hearing on page 87 and 93, there's some indication by the Sergeant or Trooper McGinnis that the dog was... The car involved is a Mini Cooper. It's a very small vehicle, and the sniff begins at the rear of the vehicle. But the video demonstrates what the officer testified was that almost immediately from giving the signal to begin the sniff, the dog is pulling the officer into or up to this open door. So I think the record does bear that out, Your Honor. And if I can get back to the situation with Inspector Sanders, by the roadside... Can we just follow up on that? I know you want to cover up some other things, but... Yes, sir. If the record doesn't show probable cause before the dog entered, what would be your fallback position? The fallback would be that there was sufficient, more than sufficient, reasonable suspicion that the dog was reacting to or alerting to this odor of controlled substance. And I would get to this later in my argument after discussing Inspector Sanders, but that the nature of the circumstances here were such that the dog was... Because of the course of action they had undertaken to deploy the dog, the fact that the window was down and the aggressive nature in which the dog alerted... The dog was going to alert whether the door had been opened or not. That's your now discovery argument? Yes, sir. But do you think there might be a basis to say all the police need is reasonable suspicion for a dog in a car? It would be like a terrorist-style situation. I mean, the Stone case arguably says that. I'm not sure why. I'm sorry, Judge. I don't know of a case that specifically states that. I'm relying on Lyons and Stone with similar circumstances where the dog instinctively entered the vehicle during the process of alerting to the odor of narcotics. And just on that, with the discoveries that you raised, was there any finding on this? No, Judge, there was not. No finding? I don't... I've reviewed both the... I didn't see... I don't think so, Your Honor. Was it in the record that the window was open? Yes, Your Honor. Passenger or driver's? It was the passenger side of the Mini Cooper, Your Honor. The testimony of the troopers was that because this encounter was occurring on I-70 and the traffic was moderate to heavy, I think that... But in any event, I-70 is a big highway. And the initial trooper involved in the stop believed it would be more safe for him if he approached on the passenger side to begin the traffic stop. And so when the inspector and the canine trooper arrive at the scene to have a conversation with the passenger, all of the conversation is occurring on the passenger side of the Mini Cooper through the opened passenger side window. Well, Your Honor, it's helpful that the Court of Appeals, that the government is pursuing an inevitable discovery to seek a finding as an alternative, because I don't know what you think about the law in this area, but there's at least an argument that without a finding that the dog would have been put in any way, I'm wondering if you could query whether we can infer on that basis. Do you have a thought on that? No, Your Honor. I'm sorry. I recognize that in hindsight, I recognize that as a failure in my... I'm just trying to figure out if there's a basis to rule on that ground. Go ahead and proceed. Yes, sir. So if I can get back to Inspector Sanders and this encounter at the roadside when the door was opened, I think the first point I've tried to make is that it was opened at the, if not the request, but at least the indication of the passenger that he desired to get out of the vehicle. And what the video evidence demonstrates is that after the passenger has unlatched and begun to open the door, this is the point when the inspector, who is standing on the paved shoulder, places his hand on the top of the passenger door. As he does so, it shows that he steps back from the paved shoulder onto the grassy median, and there is a slight incline in the manner in which he steps. He then maintains this position, standing with his hand on the door, while the passenger, Mr. Sandoval, puts his shoes on. And it appears he's perhaps using this as balance while he is standing there. After the passenger's shoes are on, the passenger stands up. The passenger and Mr. or the inspector look at each other, and the inspector then simply gestures with his arm the direction they will walk to stand in a safe place while the canine is used to walk around the vehicle. But there is nothing that demonstrates an intent by the inspector to control the door, to prevent the passenger from closing the door. There's simply no reaction either way by either of these parties to close the door once it's been opened by the passenger. So the district court made findings about Officer Sanders' intent. I think Mr. Moss is suggesting closure. I don't know what your position on that is. Well, Your Honor, I recognize that there were findings on the intent. I think, of course, that the inquiry primarily needs to be on the conduct of the officers and whether or not the conduct was designed to facilitate an unconstitutional intrusion by the canine. But I believe the findings on intent are relevant based on the record at the hearing and the testimony of the officers that they had no intention of creating a circumstance to improve their chances or their odds of getting a positive hit. Wasn't there something in the record that the troopers preferred, maybe it was McGinnis, preferred to have the door shut when, in fact, the dog was deployed? Yes, Your Honor, that was the testimony of Trooper McGinnis and that he, upon approaching the vehicle, was unaware that the door would have been left open because he had turned to go get his dog when the passenger ultimately got out of the vehicle and that was his stated preference. If there are no further questions. Your time is up. Yes, sir. Okay, thank you, Your Honor. Thank you very much. Thank you, Your Honor. Yes. Thank you, Your Honor. I do agree that the videotape which has been submitted to the court is dispositive and I believe this court is in the same position to view that tape as the district court was. So, to the extent that these facts are important, I would urge the court to conduct that review. I would note the district court order did find that, and this is on page 3 of district court document 49, that although Officer Sanders, not Mr. Polito Ayala, opened the passenger door and touched it last, that there was no intent shown as to why he particularly did that. One of the cases, I believe it may be Lyons, brings out that there's no affirmative duty on the part of the police to close the door or the hatchback or the window. I would simply draw the court's attention, there is an affirmative duty to comply with the Fourth Amendment and intent is not irrelevant to this determination and based on the conduct in the videotape, we believe that that is dispositive. Thank you. It says absent misconduct, doesn't it? Right. And I agree, it does say absent misconduct, and the way I would simply tie the misconduct to the police actions, to whatever they do, and in this particular case, by the officer opening, and maybe the passenger undid the latch, but clearly the officer opened, he keeps his hand on it, and I just don't believe it's reasonable to infer that any person at all is going to get out and remove the officer's hand from the door and close the door. That's just not the way it works. It's a show of authority and it's completely unreasonable to not think that the passenger is going to comply and observe whatever the officer is commanding him to do. Thank you. All right. Thank you for your arguments. Thank you. The case is submitted. I have a profile opinion in the courts.